Filed 6/6/16  P. v. Hawkins CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C078160 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F2844) |
| v. | |
| ANTHONY JAWON HAWKINS, | |
| Defendant and Appellant. | |

A jury convicted defendant Anthony Jawon Hawkins of corporal injury on a cohabitant (Pen. Code, § 273.5, subd. (a)--count 1),[1] false imprisonment by violence (§ 236--count 2), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)--count 3), and two counts of misdemeanor resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)--counts 4 & 5).  In a bifurcated proceeding, the trial

---

[1] Undesignated statutory references are to the Penal Code.

1

court found true the special allegations that defendant suffered a prior serious and violent felony conviction (§ 1170.12) and served a prior prison term (§ 667.5, subd. (b)). The court sentenced him to nine years in state prison.

On appeal, defendant contends (1) the trial court erred in denying his section 995 motion to set aside count 2 (false imprisonment by violence), (2) the sentence on his false imprisonment conviction should have been stayed pursuant to section 654, and (3) the trial court erred in imposing a consecutive sentence on the aggravated assault conviction (count 3) based on a dual use of facts. With regard to the latter claim, defendant concedes his failure to object on the specific grounds asserted here forfeited the claim, but asserts the failure to object was the result of the ineffective assistance of his trial counsel and urges us to remand for resentencing on count 3.

The People concede the section 654 claim, but argue the court's denial of defendant's section 995 motion was proper and defendant has shown no prejudice as a result thereof. They further argue defendant forfeited his claim regarding the court's imposition of a consecutive sentence as to count 3. The People also assert a claim that the judgment must be modified to include additional mandatory fees and assessments.

We will affirm defendant's convictions and remand the matter to the trial court for further proceedings.

FACTUAL BACKGROUND

The facts are briefly summarized as follows, and will be set forth in more detail where relevant to defendant's claims.

On May 14, 2014, defendant returned to the home he shared with his girlfriend, Leslie "Colleen" Bennett, and Bennett's mother, Leslie Jones. Seeing that defendant was drunk and agitated, Bennett asked him to leave. Defendant refused and began arguing with Bennett. He pushed her onto the bed and began choking her. When defendant loosened his grip, Bennett wiggled free and escaped to the living room where she called Jones and summoned her to the house.

2

For the next several hours, defendant argued with Bennett, grabbed her, pushed and shoved her, slammed her to the ground, and choked her several times with his hands making it difficult for her to breathe and causing her to become light-headed. During that time, Jones returned home with a friend, Russell Michaels. Both Jones and Michaels witnessed defendant choking Bennett and tried to intervene.

Eventually, Michaels left. However, defendant's assault on Bennett continued, prompting Jones to call 911. She stepped outside onto the porch, as did Bennett. Defendant followed, yelling at Jones to hang up the phone. When Bennett tried to go back inside, defendant shoved her, causing her to trip and land flat on her back. Bennett tried to make her way to the bathroom but defendant followed her and slammed her up against the wall. As Bennett made her way back outside, she heard her mother begging the 911 dispatcher to send someone to help. Defendant followed Bennett, grabbed her, and continued to choke her in the driveway. When he finally let go, she ran back inside and locked the door. Defendant pounded on the door for approximately 15 minutes until Deputies Tim Estes and Gary Nunnelley arrived.

PROCEDURAL HISTORY

Defendant was initially charged by criminal complaint with false imprisonment (§ 236--count 1), three counts of corporal injury to a cohabitant (§ 273.5, subd. (a)--counts 2, 3, & 4), and two counts of misdemeanor resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)--counts 5 & 6). The complaint alleged defendant suffered a prior serious and violent felony conviction (§ 1170.12) and served a prior prison term (§ 667.5, subd. (b)).

At the preliminary hearing, the sole witness, Deputy Estes, testified that he first spoke with Jones on the telephone prior to arriving at the apartment. Jones informed him that defendant was being combative and was choking Bennett. Once at the apartment, Deputy Estes made contact with Bennett, who "was crying . . . hysterical . . . [h]er voice was hoarse, and she had visible injuries." Bennett told him she "was terrorized over a

3

period of several hours by the defendant," with whom she had been dating and cohabitating. Bennett described three different incidents in which defendant placed his hands around her throat and strangled her.

The first incident occurred in her bedroom while she and defendant were seated on the bed. Defendant "placed his left hand around [Bennett's] throat and began to squeeze," causing her to become light-headed and making it difficult for her to breathe. He "held her against her will, pushed her over backwards on the bed and held her . . . [¶] . . . [¶] . . . [b]y her neck, forcing her back against the bed." Bennett told Deputy Estes that defendant held her down for approximately one minute.

The second incident also occurred in the bedroom. When Bennett entered the bedroom and asked defendant to leave, defendant "sandwiched her against the wall, grabbed her throat with both hands, pushed her on to the bed and then began to squeeze," again making her light-headed and unable to breathe.

The third incident occurred when Bennett left the apartment. Defendant caught up with her, "grabbed her around the throat with his hands, and again began to squeeze," making her light-headed and unable to breathe.

Following the preliminary hearing, the court indicated its tentative ruling as follows: "Well, what I am looking at is, before you argue, one count of [section] 273.5, given the evidence here."

The prosecution argued the evidence of three separate incidents supported the three counts as alleged. The prosecution also argued the evidence of defendant "holding [Bennett] down and not letting her up for a minute" was sufficient to support the false imprisonment count.

4

Defense counsel argued the entire incident was an "on-going argument," which could not be separated into three separate counts, and the evidence that defendant held Bennett down for one minute did not support a separate charge of false imprisonment.[2]

Agreeing with defendant that the evidence demonstrated a "continual string of violence" with "no separation," the court concluded "there is a single [section] 273.5." The court also noted that "considering being held down during the course of the [section] 273.5 for approximately a minute, as a fully separate crime, is not something that I can concur with," and held defendant to answer as follows: "So I would find a single felony for holding. That could be [c]ount 2, if you like, three or four. One of the [section] 273.5's. That obviously, given the agreement by defense, hold the defendant on [c]ount[s] 5 and 6."

The prosecution filed a new information charging defendant with corporal injury on a cohabitant (§ 273.5, subd. (a)--count 1), false imprisonment by violence (§ 236--count 2), assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)--count 3), and two counts of misdemeanor resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)--counts 4 & 5), and alleging he suffered a prior serious and violent felony conviction (§ 1170.12) and served a prior prison term (§ 667.5, subd. (b)).

Defendant filed a motion to set aside count 2 of the new information pursuant to section 995. The trial court denied the motion.[3]

The trial court sentenced defendant to an aggregate term of nine years in state prison. In that regard, the court imposed the middle term of three years for the corporal injury conviction (count 1), doubled pursuant to the prior strike, plus a concurrent two-year term for the false imprisonment conviction (count 2), a consecutive two-year term

---

[2] Defense counsel conceded the evidence was sufficient to hold defendant on the two misdemeanor counts for resisting, obstructing, or delaying a peace officer (counts 5 & 6).

[3] The record does not contain a transcript of the proceedings.

(one-third the middle term) doubled for the assault conviction (count 3), a consecutive one-year term for the prior prison term enhancement, and two concurrent one-year terms for the two misdemeanor convictions for resisting a peace officer (counts 4 & 5).[4] Defense counsel objected to the sentence on count 3, arguing it should either have been stayed pursuant to section 654 or run concurrent.

The court imposed a $10,000 restitution fine (§ 1202.4), a $10,000 parole revocation restitution fine (§ 1202.45) stayed pending successful completion of parole, a $120 court operations assessment (§ 1465.8, subd. (a)(1)), and a $60 criminal conviction assessment (Gov. Code, § 70373), and ordered defendant to pay victim restitution as directed by the Department of Corrections and Rehabilitation.[5]

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Denial of Section 995 Motion*

Defendant contends the trial court's denial of his motion to set aside count 2 alleging false imprisonment with violence (§ 236) was error because the evidence presented at the preliminary hearing was insufficient to support the charge.

The People argue there was adequate evidence at the preliminary hearing to hold defendant over on the charge of false imprisonment and, in any event, defendant has not shown resulting prejudice. We agree with the People.

---

[4] In imposing sentence, the trial court misspoke, referring to the violation of section 273.5 as count 2 and the violation of section 236 as count 1, rather than vice versa as alleged in the information and reflected in the sentencing minute order and abstract of judgment.

[5] The court's minute order and the abstract of judgment both reflect a $90 criminal conviction assessment pursuant to Government Code section 70373.

Section 995, subdivision (a)(2) states that an information shall be set aside upon a defense motion if "the defendant had not been legally committed by a magistrate" before the filing of the information, or "the defendant had been committed without reasonable or probable cause."

"An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." (*Frazzini v. Superior Court* (1970) 7 Cal.App.3d 1005, 1015-1016.) "Evidence that will justify a prosecution need not be sufficient to support a conviction. [Citations.] Every legitimate inference that may be drawn from the evidence must be drawn in favor of the determination of probable cause." (*Id.* at p. 1015; see also *People v. Superior Court (Costa)* (2010) 183 Cal.App.4th 690, 699.) "And, while there must be *some* showing as to the existence of each element of the crime, such a showing may be made by means of circumstantial evidence supportive of reasonable inferences." (*People v. Superior Court (Costa)*, at p. 699.)

We review section 995 rulings to determine whether substantial evidence supports the decision of the magistrate holding the defendant to answer the charges. (*People v. Davis* (2010) 184 Cal.App.4th 305, 310-311; *People v. Lopez* (1975) 52 Cal.App.3d 263, 265-266.)

Here, the challenged charge is false imprisonment with violence. " 'False imprisonment is the unlawful violation of the personal liberty of another.' (Pen. Code, § 236.) [¶] ' " ' "In order to constitute a case of false imprisonment, it is essential that there be some restraint of the person; but it is not necessary that there be confinement in a jail or prison. Any exercise of force, or express or implied threat of force, by which in fact the other person is deprived of his liberty or is compelled to remain where [s]he does not wish to remain, or to go where [s]he does not wish to go, is false imprisonment. The wrong may be committed by acts or by words, or both, and by merely operating upon the will of the individual or by personal violence, or both. . . ." ' [Citations.]" ' [Citation.]

7

[¶] *People v. Haney* (1977) 75 Cal.App.3d 308, 313, involved false imprisonment and sets forth 'unlawful restraint' in its simplest form: [¶] 'The primary element of the offense, the unlawful restraint of another's liberty, does not require one or more of those elements necessary to raise the crime to felony status. All that is necessary to make out a charge of false imprisonment, a misdemeanor, is that "the individual be restrained of [her] liberty without any sufficient complaint or authority therefor, and it may be accomplished by words or acts [together with the requisite intent to confine] which such individual fears to disregard." ' " (*People v. Grant* (1992) 8 Cal.App.4th 1105, 1112, italics omitted.)

For purposes of establishing felony false imprisonment by violence or menace (§ 237), " 'violence' means ' "the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint." ' [Citation.] In this context, 'menace' means ' "a threat of harm express or implied by word or by act." ' [Citation.]" (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1123.)

Defendant contends that while the evidence presented at the preliminary hearing did show he used force, it did not show "anything above or beyond the force it would have taken to restrain [Bennett]," as is required in order to establish felony false imprisonment by violence or menace. (*People v. Hendrix* (1992) 8 Cal.App.4th 1458, 1462; *People v. Castro* (2006) 138 Cal.App.4th 137, 140.) The claim is meritless.

Deputy Estes testified at the preliminary hearing that Bennett recounted three incidents in which defendant strangled her. During one of those incidents, defendant held Bennett against her will, pushed her back against the bed, placed his hands around her throat, and squeezed for approximately one minute. In other words, defendant did not simply push Bennett against the bed and hold her there, he used his hands to choke her and put enough pressure on her throat to restrict her breathing and cause her to become light-headed. He strangled Bennett for one minute, leaving visible red marks on her throat and causing her to speak in a hoarse voice by the time deputies arrived.

8

Defendant's conduct was violent and indeed above and beyond the force required to simply restrain Bennett on the bed.

In any event, even if we were to assume the section 995 motion was denied in error, defendant must show not only that denial of the motion was erroneous, but also prejudicial. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 140; *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529-530.) He has failed to do so.

At trial, Bennett testified defendant pushed her onto the bed and choked her for "[p]robably a minute," making it difficult for her to breathe. When he loosened his grip, she wriggled free and fled to the living room to call her mother. She testified that, during the next several hours before law enforcement arrived, defendant choked Bennett several more times, making it difficult for her to breathe and causing her to feel light-headed. At one point, she "turned around to try to walk away" and defendant grabbed her arm and pulled her towards him. She was able to twist away but defendant held her by her arms and tried to pull her into the bedroom and close the door. When she yelled to her mother for help, defendant threw her on the bed, got "kind of on top of [her] with one knee," and choked her, causing her to black out. Defendant stopped when Michaels intervened, but Bennett remained on the bed for approximately five minutes because she was afraid to move. At another point, she lay down on the bed and started to drift off but awoke to find defendant's hands around her throat choking her. At yet another point, Jones was on the telephone calling 911 and Bennett "tried to follow her outside because [Bennett] was scared." Defendant was right behind her and, when she turned back around towards the house, defendant shoved her, causing her to hit her head on the table and land on her back on the hardwood floor. When Bennett got back on her feet and went back outside towards her mom who was in the driveway on the phone, defendant grabbed her by the neck with one hand and squeezed hard enough to restrict her breathing, and with his other hand squeezed her face, telling her she "better not call the cops." Bennett pushed on him and tried to back away while Jones tried unsuccessfully to pull defendant's hand from

9

Bennett's throat. When Jones said something to the effect of "the cops [are] on their way," defendant let go and Bennett was able to run back to the house for safety. Defendant chased after her and pounded on the locked door but was unable to enter the home.

Bennett also testified that, following one of the choking incidents, she walked into the living room. Defendant followed her, shouting at her. He began pushing and pulling her and, as she "continued to try to just get away from him," he slammed her onto Jones's futon. Bennett kicked at defendant to fend him off while Jones called 911. Defendant grabbed Bennett by the crotch of her pants, pulled her up, and slammed her onto the floor.

Jones testified at trial, corroborating Bennett's testimony to the extent she was present. Deputy Estes also testified at trial, corroborating Bennett's claims of being choked by defendant. He described the injuries she suffered as a result of the violence, including bruises on her arms, chest, and back, and redness on her throat, and that she was speaking with a hoarse voice and had urinated on herself.

The evidence presented at trial demonstrated defendant's conduct was violent and above and beyond the force required to simply restrain Bennett. Therefore, defendant suffered no prejudice because the evidence at trial was sufficient to support the conviction for felony false imprisonment with violence or menace.

## II

### Section 654 Stay of Count 2

Next, defendant contends section 654 bars the concurrent term imposed by the trial court for the false imprisonment conviction (count 2). The People concede the issue. We accept the People's concession.

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

10

omission be punished under more than one provision." (§ 654, subd. (a).) "The purpose of section 654 is to prevent multiple punishment for a single act or omission, even though that act or omission violates more than one statute and thus constitutes more than one crime. Although the distinct crimes may be charged in separate counts and may result in multiple verdicts of guilt, the trial court may impose sentence for only one offense--the one carrying the highest punishment. [Citation.]" (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135, fn. omitted.)

The record reveals that, in falsely imprisoning Bennett by holding her down by the throat and choking her, defendant's only objective was to continue his assault on her. That is to say, the false imprisonment was part and parcel of the assaultive conduct. Because the assault and the false imprisonment constituted a single course of conduct, section 654 prohibits punishment for more than one offense related thereto. Thus, we conclude the trial court should have stayed the sentence for the false imprisonment conviction (count 2). We will modify the judgment to reflect that the sentence imposed for defendant's conviction for false imprisonment (count 2) is stayed pursuant to section 654.

III

*Imposition of Consecutive Sentences*

Finally, defendant contends the trial court erred in imposing a consecutive sentence on count 3. He challenges the court's reasons for selecting a consecutive sentence. In that regard, the court reasoned as follows:

"The [section] 245 [subdivision] (a)(1) was designated by [the prosecution] as a separate and distinct count, and that was the kicking to the face as [Bennett] was being pulled off the bed. That was a significant event, so I am going to determine that that should be a consecutive count. One-third the mid, 245 is two years times two, would be two years."

11

Defense counsel responded as follows: "My only disagreement with the Court is on the [c]ount 3, [section] 245 [subdivision] (a)(1). I think the [section] 273.5, the [section] 236, and the [section] 245 [subdivision] (a)(4) are all . . . [s]ection 654 crimes in that they are -- although, as explained to the jury, the district attorney was proceeding on the [section] 245 on one part of this incident, it is still a continuous course of conduct and they could very well -- the corporal injury to a spouse and the assault with force likely, they're hard to parse out and say, the corporal injury to a spouse is not based on the same incident. Even if, technically, they're not [section] 654, I would ask that they run concurrent much like the false imprisonment runs concurrent because in looking at two [con]current versus consecutive sentences, this is all one incident over a period of hours, but neither one of them leave. The victim does -- this isn't just a constant beating. The victim goes to the front door, comes back, [defendant] walks around. There's sporadic violence through a couple of hours, but it's clear, I think, to everyone that's all one incident. When the Court's talking about consecutive versus concurrent, this all was basically part of the same incident. It occurred on the same date. That's why I'm saying, even if it's not technically [section] 654, I think each of the crimes should be run concurrent. So, I would be asking for a midterm on the [section] 273.5, understanding there's a prison prior for a total of seven years."

Defendant contends the court's characterization of the assault as "significant" constituted an improper dual use of facts. He further claims the purported fact of defendant "kicking [Bennett] in the face" was not part of the evidence. Finally, he claims that, because there was only one victim and the crimes (i.e., corporal injury, assault, & false imprisonment) were all "committed so closely in time and place as to indicate a single period of aberrant behavior" (Cal. Rules of Court, rule 4.425(a)(3)), the evidence did not indicate an independent purpose or objective (Cal. Rules of Court, rule 4.425(a)(1)). Thus, he claims, the sentence imposed for count 3 must be reversed.

12

The People argue defendant forfeited his claim for failure to object to the court's statement of reasons despite being "well aware of the court's sentencing choices and [having] a meaningful opportunity to object." (*People v. Scott* (1994) 9 Cal.4th 331, 354, 356; *People v. Velasquez* (2007) 152 Cal.App.4th 1503, 1511.)

In response to the People's argument, defendant concedes his failure to object, but contends the failure was the result of the ineffective assistance of his trial counsel, which resulted in a sentence based on inappropriate sentencing factors.

To succeed on his claim of ineffective assistance of counsel, defendant has the burden of showing both that his counsel's performance was deficient and that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) To show prejudice, defendant must show there is a reasonable probability that but for counsel's performance, the result of the proceeding would have been different. (*Id*. at p. 694.) If defendant fails to show prejudice, we need not determine whether counsel's performance was deficient. (*People v. Weaver* (2001) 26 Cal.4th 876, 961.)

Our review of the record reveals there was no evidence presented at trial regarding defendant kicking Bennett in the face, nor did the prosecution rely on such a theory in support of the assault charge (count 3). Thus, the record establishes on its face defense counsel's error in failing to object. Because the trial court found defendant kicking Bennett in the face, a fact not found in the record, to be a "significant event," we must conclude that had defendant's counsel objected to the sentence for count 3 on the challenged grounds, there is a reasonable probability the trial court would not have imposed a consecutive term and trial counsel's failure to object fell below an objective standard of reasonableness. We will therefore remand the matter for resentencing on count 3.

IV

*Mandatory Fees and Assessments*

The People contend the trial court properly imposed $120 in mandatory court security fees (§ 1465.8, subd. (a)(1)) and $90 in mandatory court operations assessments (Gov. Code, § 70373) as to three of defendant's five convictions, but failed to do so as to the remaining two convictions, thus resulting in an unauthorized sentence. The People contend the issue of an unauthorized sentence can be raised for the first time on appeal (*People v. Rodriguez* (2000) 80 Cal.App.4th 372, 376) and is therefore not forfeited by their failure to object below. Defendant's reply brief does not address the issue.

Failure to impose mandatory fees, fines, penalties, and assessments constitutes an unauthorized sentence, which may be corrected by an appellate court even in the absence of an objection or argument below. (*People v. Turner* (2002) 96 Cal.App.4th 1409, 1413-1415.) We exercise our inherent authority to modify the judgment to impose an aggregate court security fee of $200 pursuant to section 1465.8, and an aggregate court operations assessment of $150 pursuant to Government Code section 70373.

DISPOSITION

The judgment is modified to reflect that the sentence imposed for defendant's conviction for false imprisonment (count 2) is stayed pursuant to section 654. The judgment is further modified to reflect a $200 court security fee (§ 1465) and a $150 court operations assessment (Gov. Code, § 70373). The matter is remanded to the trial court for resentencing on count 3. The trial court is directed to amend the abstract of judgment accordingly and send a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the clerk of this court is ordered to forward a copy of this opinion to the

14

State Bar upon finality of this appeal.[6] Further, pursuant to Business and Professions Code section 6086.7, subdivision (b), the clerk of this court shall notify defendant's trial counsel that the matter has been referred to the State Bar.

                                             /s/
                                               Blease, Acting P. J.

We concur:

       /s/
       Hull, J.

       /s/
       Robie, J.

---

[6] Business and Professions Code section 6086.7, subdivision (a)(2) requires the court to notify the State Bar "[w]henever a modification or reversal of a judgment in a judicial proceeding is based in whole or in part on the misconduct, incompetent representation, or willful misrepresentation of an attorney."